IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| THOMAS M. WILLIAMS, | : |
| Plaintiff, | : |
| | : Case No. 3:11-cv-249 |
| vs. | : |
| | : JUDGE WALTER HERBERT RICE |
| METLIFE DISABILITY, *et al.*, | : |
| Defendants | : |

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD (DOC. #9);
JUDGMENT TO ENTER IN FAVOR OF DEFENDANTS AND AGAINST
PLAINTIFF; TERMINATION ENTRY

Plaintiff, Thomas M. Williams, filed suit against MetLife Disability, and against the University of Dayton Long Term Disability Plan for Salaried Associates, seeking relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). He argues that Defendants acted in an arbitrary and capricious manner in terminating his long term disability benefits for his alleged refusal to participate in a mandatory vocational rehabilitation program.

This matter is currently before the Court on Defendants' motion for judgment on the administrative record (Doc. #9). Plaintiff has also submitted a "Memoranda on the Merits" (Doc. #10), which the Court construes as a cross-motion for judgment on the administrative record.

I.    **Background and Procedural History**

Plaintiff was employed by the University of Dayton for 20 years, and was a participant in the University of Dayton Long Term Disability Plan for Salaried Associates (the "Plan"), insured by Metropolitan Life Insurance Company ("MetLife"). He left his job in June of 2004 due to bilateral knee pain. He began receiving long term disability (LTD) benefits through MetLife on November 30, 2004. AR 150.

In March of 2006, Steve Kleinhenz, M.D., Plaintiff's treating physician, determined that Plaintiff was capable of engaging in sedentary work. Kleinhenz found that Plaintiff was able to sit for 8 hours a day, stand for 4 hours a day, walk for 4 hours a day, lift up to 20 pounds frequently and 100 pounds occasionally, and engage in other physical activity. AR 46-47.

MetLife received a copy of Dr. Kleinhenz's report. On October 19, 2006, Joseph Atkinson, a vocational rehabilitation consultant for MetLife, contacted Plaintiff by phone. He explained to Plaintiff that the Plan contained a mandatory rehabilitation provision, and told Plaintiff that he needed to apply for vocational rehabilitation services through the Ohio Bureau of Vocational Rehabilitation ("OBVR"). At this point, Plaintiff became angry and hung up on Atkinson. AR 235-37.

Atkinson then sent Plaintiff a letter, dated October 30, 2006, by certified mail, to follow up on the phone conversation. He noted that, based on Dr.

2

Kleinhenz's report, it appeared that Plaintiff was a good candidate for vocational rehabilitation. He again told Plaintiff that the Plan contained a mandatory rehabilitation provision, and told him that his failure to participate in a rehabilitation program could result in termination of his LTD benefits. Atkinson also noted that the Plan provided certain incentives for participation in the rehabilitation program. He provided Plaintiff with contact information for the OBVR and told him that he would follow up with him in 2-3 weeks. AR 20-21.

On November 30, 2006, Atkinson sent an email message to Plaintiff asking if he had contacted OBVR to apply for vocational rehabilitation services. Atkinson attached another copy of his October 30, 2006, letter to that email. Atkinson's email message was successfully relayed to the email address Plaintiff had provided. Plaintiff, however, did not respond to Atkinson. AR 18, 239-241.

Therefore, on December 11, 2006, Atkinson again called Plaintiff. He left a voice mail message asking Plaintiff to call him with an update on the status of his application with OBVR. Again, Plaintiff failed to return the phone call. On the same date, Atkinson contacted OBVR and was informed that Plaintiff had not yet applied for any services. AR 18, 242. On December 14, 2006, Tracey Ferstler, another vocational rehabilitation counselor for MetLife, left a voice mail message asking Plaintiff to return her call. Plaintiff again failed to respond. AR 11, 243.

On January 11, 2007, MetLife sent Plaintiff a letter notifying him that his LTD benefits were being terminated because he had failed to comply with the

3

terms of the Plan. In that letter, MetLife noted that the Plan provided that benefit payments would end on "the date You cease or refuse to participate in a Rehabilitation Program that We require." AR 17-18. MetLife explained that Plaintiff had failed to apply for state rehabilitation services, and had failed to respond to numerous phone calls, letters, and email messages. The letter stated that Plaintiff had 180 days to file a written appeal. AR 19.

Plaintiff failed to file a timely appeal. However, on October 16, 2007, nine months after his benefits were terminated, he called MetLife to inquire about the "status" of his claim. MetLife told him that his claim had been terminated in January of 2007 because he had failed to comply with the mandatory vocational rehabilitation requirements. Plaintiff denied receiving any letter to that effect and wanted to know if he had any recourse. MetLife told him that he would need to appeal the decision. MetLife confirmed his street address and sent him another copy of the January 11, 2007, letter, which explained the appeal process. AR 252-53.

On December 20, 2007, Plaintiff's attorney, Barry Galen, sent MetLife a letter stating that his client had just received the January 11, 2007, termination letter on October 20, 2007, and intended to comply with any reasonable requirements. AR 5. MetLife agreed to treat this letter as a timely appeal.

On January 16, 2008, MetLife notified Galen that it had reviewed the file and was upholding the termination of Plaintiff's LTD benefits, effective January 11,

2007. The letter explained that, prior to terminating the LTD benefits, MetLife had made numerous attempts to assist Plaintiff in complying with the mandatory rehabilitation requirements of the Plan, but Plaintiff had refused to cooperate. MetLife further noted that, although Plaintiff denied receiving the January 11, 2007, letter, none of the benefit checks or other correspondence sent to Plaintiff at that same address were returned as undeliverable. AR 1-3.

On July 18, 2011, Plaintiff filed this ERISA action seeking a declaratory judgment that he is an eligible participant and is entitled to LTD benefits under the Plan. He also seeks damages for all disability benefits accrued. Doc. #1.

## II. Relevant Law and Standard of Review

Plaintiff has filed suit pursuant to 29 U.S.C. § 1132(a)(1)(B), which permits a participant or beneficiary of an employee benefit plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

In *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), the Sixth Circuit held that, in adjudicating an ERISA claim for benefits, summary judgment procedures are not applicable. Rather, the Court must review the administrative record and make findings of fact and conclusions of law concerning the merits of the action. *Id.* at 619 (Gilman, J., concurring in the judgment and delivering the opinion of the Court on the summary judgment issue).

In *Firestone Tire & Rubber Company v. Bruch*, 489 U.S. 101 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. If such discretionary authority is clearly granted, an abuse of discretion standard applies, and the employee must show that the decision was arbitrary and capricious. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998).

> In this case, the Plan clearly grants discretionary authority to MetLife:
>
> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

AR 317. Therefore, in order to succeed on his claim, Plaintiff must show that MetLife's termination of his LTD benefits, based on his alleged refusal to participate in a required rehabilitation program, was "arbitrary and capricious."

### III. Analysis

Defendant argues that it is entitled to judgment on the administrative record because: (A) Plaintiff's suit is time-barred; and (B) the termination of LTD benefits was not arbitrary and capricious. The Court agrees on both accounts.

6

### A.     Claim Barred by Statute of Limitations

ERISA contains no statute of limitations for claims challenging a denial of benefits under 29 U.S.C. § 1132(a)(1)(B).[1]  Unless the employee benefit plan at issue includes a specific statute of limitations, the most analogous state statute of limitations applies.  *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 454 (6th Cir. 2009).  Citing *Meade v. Pension Appeals & Review Committee*, 966 F.2d 190, 195 (6th Cir. 1992), Plaintiff argues that Ohio's 15-year statute of limitations for breach of contract applies, and that his claim is therefore timely filed.

In so arguing, Plaintiff ignores the fact that the Plan establishes a 3-year statute of limitations that supersedes the statute of limitations under state law. *See Allen v. Unionmutual Stock Life Ins. Co. of Am.*, 989 F. Supp. 961, 965 (S.D. Ohio 1997).  The Plan provides that "[a] legal action may only be brought against Us during a certain period.  This period begins 60 days after the date Proof is filed and ends 3 years after the date such Proof is required."  AR 307.  In *Rice*, the Sixth Circuit held that a similar 3-year statute of limitations contained in an employee benefit plan was reasonable and enforceable.  578 F.3d at 454.  *See also Allen v. Unionmutual Stock Life Ins. Co. of Am.*, 989 F. Supp. 961, 964-5 (S.D. Ohio 1997) (holding the same).

---

[1] ERISA provides that actions for breach of fiduciary duty must be brought within three years after the plaintiff has actual knowledge of the breach. 29 U.S.C. § 1113(2).  The parties agree, however, that this statute of limitations is inapplicable to Plaintiff's claim.

7

The Court finds that the Plan's 3-year statute of limitations applies. The only question is when it began to run. The Plan states that it begins to run on the date "Proof is required." AR 307. "Proof" is defined as "written evidence satisfactory to [MetLife] that a person has satisfied the conditions and requirements for any benefit described in the certificate." AR 284. MetLife maintains that, in order for Plaintiff's LTD benefits to be continued, he was required to submit Proof that he complied with the Plan's mandatory rehabilitation requirements.

The problem is that, with respect to participation in a vocational rehabilitation program, the Plan does not establish any deadline for submitting such "Proof" of compliance, and there is no evidence that MetLife ever told Plaintiff that he must comply by a certain date. MetLife nevertheless argues that Proof of compliance was required before January 11, 2007, the date on which it terminated his LTD benefits. Plaintiff did not file suit until July 18, 2011, four and a half years later. MetLife therefore argues that his suit is barred by the statute of limitations.

In the alternative, MetLife argues that the 3-year statute of limitations began to run on January 16, 2008, the date on which MetLife sent the letter upholding the termination of benefits. At that point, Plaintiff had exhausted his administrative remedies and was able to file suit. MetLife notes that, even using this later date, Plaintiff's suit was still filed six months late.

8

The Court need not decide when the statute of limitations began to run. The Court agrees with MetLife that, under either scenario, Plaintiff's suit is barred by the 3-year statute of limitations. Even if the suit were not time-barred, the Court finds that MetLife's decision to terminate Plaintiff's LTD benefits was not arbitrary or capricious.

**B.     No Arbitrary and Capricious Termination of Benefits**

The "arbitrary and capricious" standard of review is extremely deferential. The plan administrator's decision must be upheld as long as it is "rational in light of the plan's provisions." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.), *cert. denied*, 488 U.S. 826 (1988)).

Plaintiff argues that MetLife's termination of benefits was arbitrary and capricious because: (1) the Plan does not clearly state that failure to participate in rehabilitation services will result in termination of LTD benefits; and (2) absent proof that he knew that he was "required" to participate in vocational rehabilitation services, it cannot be said that he "refused" to participate in such a program.

The Court rejects both of these arguments. Plaintiff notes that the Plan provides monetary "incentives" for participation in a rehabilitation program. AR 294. With regard to incentives for returning to work, the Plan states, "[i]f it is determined that you are capable, but you do not participate in the Return to Work

9

Program, your Disability benefits *may* cease." AR 313 (emphasis added). Plaintiff argues that this language suggests that participation in a rehabilitation program is voluntary, and that he had no way of knowing that his refusal to participate would result in the termination of his LTD benefits.

Defendants note, however, that the Plan also states that, "[y]our Disability benefit payments *will* end on the earliest of: . . . the date You cease or refuse to participate in a Rehabilitation Program that we require." AR 299 (emphasis added). Moreover, Atkinson discussed the "mandatory rehabilitation clause" with Plaintiff during the October 19, 2006, phone call, and mentioned it again in the October 30, 2006, letter, which was sent to Plaintiff by certified mail, and was also attached to an email message sent to Plaintiff on November 30, 2006. AR 18, 20, 239-41.

Plaintiff argues that Defendants have presented no credible evidence that he received the October 30, 2006, letter. He notes that the certified mail return receipt shows that "Ron Johnson" signed for the letter that was allegedly delivered to Plaintiff's address. AR 16. In an affidavit attached to his Memoranda on the Merits, Plaintiff states that he has "no knowledge of Ron Johnson or who he is, have never had anyone by that name or similar name residing or staying at that address." Williams Aff. ¶4.

Defendant maintains that the Court cannot consider Plaintiff's affidavit because it is not part of the administrative record and was not before the plan

10

administrator when the decision to terminate benefits was made. The Court disagrees. In *Wilkins*, the Sixth Circuit held that the Court can consider evidence outside the administrative record "if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." 150 F.3d at 619.

Here, Plaintiff has argued that MetLife did not provide him with adequate notice that he was required to participate in the rehabilitation program and that his failure to do so would result in the termination of LTD benefits. To the extent that this is a "due process" type of argument, the Court may consider Plaintiff's affidavit.

Ultimately though, that affidavit is of little use to Plaintiff. Notably, although Plaintiff states that he does not know who "Ron Johnson" is, Plaintiff's affidavit contains no statement denying receipt of that certified letter. As Defendant notes, benefit checks and other correspondence mailed to Plaintiff at that address were never returned as undeliverable. Moreover, another copy of that letter was attached to the email message sent to Plaintiff on November 30, 2006.

Plaintiff argues that MetLife cannot prove that he received the November 30, 2006, email message, or the voice mail messages left on December 11, 2006, and December 14, 2006. But again, Plaintiff does not deny receiving those email and voice mail messages. Under the circumstances presented here, Plaintiff is charged

11

with notice that he was required to participate in the vocational rehabilitation program and that his refusal to participate would result in the termination of his LTD benefits.[2]

After reviewing the administrative record, the Court finds that MetLife's decision to terminate Plaintiff's LTD benefits was not arbitrary and capricious. The record shows that MetLife made numerous attempts to communicate with Plaintiff, via telephone, letter, and email, about his participation in the mandatory vocational rehabilitation program. Plaintiff wholly failed to respond and failed to comply with MetLife's directive to contact OBVR to apply for rehabilitation services. MetLife's determination that Plaintiff "refused" to participate in the required rehabilitation is reasonable.

As noted earlier, the Plan provides that LTD benefits will cease on the date the plan participant refuses to participate in a required rehabilitation program. Under the facts of this case, MetLife's decision to terminate Plaintiff's benefits must be deemed "rational in light of the plan's provisions." *Miller*, 925 F.2d at 984. The Court, therefore, upholds that decision.

One final note. Plaintiff also appears to challenge the adequacy of the January 11, 2007, termination notice. ERISA requires plan administrators to "provide adequate notice in writing to any participant . . . whose claim for benefits

---

[2] Defendants also argue that the fact that Plaintiff waited 10 months after his benefits were terminated to contact MetLife shows that he knew the reason why they were terminated.

12

under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1).

In the Court's view, MetLife's January 11, 2007, termination letter satisfies this requirement. It clearly explains that Plaintiff's LTD benefits are being terminated because he failed to comply with the terms of the Plan. It cites the provision stating that benefits will cease on the date of refusal to participate in a required rehabilitation program, and sets forth, in detail, all of MetLife's attempts to communicate with Plaintiff about the mandatory rehabilitation program. The letter further states that Plaintiff has failed to apply for state rehabilitation services and failed to respond to MetLife's repeated attempts to communicate with him. AR 17-19. The Court therefore finds that the termination letter satisfies the requirements of § 1133(1).

## IV. Conclusion

The Court finds that Plaintiff's ERISA claim is time-barred, and that Defendants' termination of Plaintiff's long-term disability benefits was not arbitrary or capricious. The Court therefore SUSTAINS Defendants' Motion for Judgment on the Administrative Record (Doc. #9).

Judgment shall be entered in favor of Defendants and against Plaintiff. The captioned cause is hereby ordered terminated upon the docket records of the

United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: July 20, 2012

*Walter Herbert Rice*
WALTER HERBERT RICE
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record